**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL YANNES, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>SCWORX CORP., and MARC S. SCHESSEL,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Daniel Yannes ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by SCWorx Corp. ("SCWorx" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by SCWorx; and (c) review of other publicly available information concerning SCWorx.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired SCWorx securities between April 13, 2020 and April 17, 2020, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. SCWorx provides data content and services related to the repair, normalization and interoperability of information for healthcare providers.

3. On April 13, 2020, before the market opened, SCWorx announced that it had received a committed purchase order of two million COVID-19 rapid testing kits, "with provision for additional weekly orders of 2 million units for 23 weeks, valued at $35M per week."

4. On this news, the Company's share price increased by $9.77, to close at $12.02 per share on April 13, 2020.

5. On April 17, 2020, Hindenburg Research issued a report doubting the validity of the deal, calling it "completely bogus." According to Hindenburg Research, the Covid-19 test supplier that SCWorx is buying from, Promedical, has a Chief Executive Officer "who formerly ran another business accused of defrauding its investors and customers" and "was also alleged to have falsified his medical credentials," Promedical claimed to the FDA and regulators in

Australia to be offering COVID-19 test kits manufactured by Wondfo, but "Wondfo put out a press release days ago stating that Promedical 'fraudulently mispresented themselves' as sellers of its Covid-19 tests and disavowed any relationship," and the buyer that SCWorx claimed to have lined up does not appear to be "capable of handling hundreds of millions of dollars in orders."

6. On this news, the Company's share price fell $1.19, or more than 17%, over three consecutive trading sessions to close at $5.76 per share on April 21, 2020, on unusually heavy trading volume.

7. On April 22, 2020, the SEC halted trading of the Company's stock. As of the filing of this complaint, trading remains halted.

8. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that SCWorx's supplier for COVID-19 tests had previously misrepresented its operations; (2) that SCWorx's buyer was a small company that was unlikely to adequately support the purported volume of orders for COVID-19 tests; (3) that, as a result, the Company's purchase order for COVID-19 tests had been overstated or entirely fabricated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

13. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14. Plaintiff Daniel Yannes, as set forth in the accompanying certification, incorporated by reference herein, purchased SCWorx securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15. Defendant SCWorx is incorporated under the laws of Delaware with its principal executive offices located in New York, New York. SCWorx's common stock trades on the NASDAQ exchange under the symbol "WORX."

16. Defendant Marc S. Schessel ("Schessel") was the Company's Chief Executive Officer ("CEO") and interim Chief Financial Officer ("CFO") at all relevant times. Defendant Schessel, also referred to as the "Individual Defendant", because of his positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to

be corrected. Because of his positions and access to material non-public information available to them, the Individual Defendant knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendant is liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17. SCWorx provides data content and services related to the repair, normalization and interoperability of information for healthcare providers.

### Materially False and Misleading Statements Issued During the Class Period

18. The Class Period begins on April 13, 2020. On that day, before the market opened, SCWorx announced that it had received a committed purchase order of two million COVID-19 rapid testing kits, "with provision for additional weekly orders of 2 million units for 23 weeks, valued at $35M per week." In a press release, the Company stated:

> SCWorx Corp. (Nasdaq: WORX) announced today that it has received a committed purchase order from Rethink My Healthcare, a U.S.-based virtual healthcare network, for two million COVID-19 Rapid Testing Units, with provision for additional weekly orders of 2 million units for 23 weeks, valued at $35M per week.
>
> Under the Order, SCWorx will supply Rethink My Healthcare with IgM/IgG Rapid Detection Kits. SCWorx anticipates receiving the first 2 million rapid detection kits within approximately two weeks.
>
> "Widespread testing for COVID-19 disease in the United States is absolutely critical for saving lives and reopening our economy," said Marc Schessel, CEO of SCWorx. "Our substantial purchase order from Rethink My Healthcare will significantly increase the availability of rapid-test kits in the United States. Additional purchase orders currently under negotiation with certain other parties could further increase the U.S. supply of these important tests in the near term."

19. On this news, the Company's share price increased by $9.77, to close at $12.02 per share on April 13, 2020.

20. The above statements identified in ¶ 18 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that SCWorx's supplier for COVID-19 tests had previously misrepresented its operations; (2) that SCWorx's buyer was a small company that was unlikely to adequately support the purported volume of orders for COVID-19 tests; (3) that, as a result, the Company's purchase order for COVID-19 tests had been overstated or entirely fabricated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

21. On April 17, 2020, Hindenburg Research issued a report doubting the validity of the deal, calling it "completely bogus," considering Chief Executive Officer Marc Schessel's checkered past, questionable credibility of supplier Promedical, and the relatively small size of its client Rethink My Healthcare. In a report entitled "SCWorx: Evidence Points to its Massive COVID-19 Test Deal Being Completely Bogus, Price Target Back to $2.25 Or Lower," Hindenburg Research stated, in relevant part:

- SCWorx, a nanocap company headquartered in a Regus rental office in New York City, recently announced it had entered into massive $35 million per week deal to buy and re-sell Covid-19 tests, causing its stock to surge 434%.
- SCWorx's CEO has a checkered past, including pleading guilty to felony tax evasion charges and paying a judgement in a lawsuit alleging he submitted fraudulent expense reports.
- The *Covid-19 test supplier that SCWorx is buying from, Promedical, also is laden with red flags.* Its CEO is a convicted rapist and formerly ran another business accused of defrauding its investors and customers. *The CEO was also alleged to have falsified his medical credentials.*
- *Promedical claimed to the FDA and regulators in Australia to be offering COVID-19 test kits manufactured by large, well-respected Chinese firm Wondfo.*
- *Wondfo put out a press release days ago stating that Promedical "fraudulently mispresented themselves" as sellers of its Covid-19 tests and disavowed any relationship. We spoke with Wondfo and confirmed there was never any relationship.*

- Meanwhile, the buyer that SCWorx has lined up for up to $840 million dollars in tests is a virtual healthcare company started by a 25-year-old in August 2018 that looks modestly sized, with only 3 employees and 3 consultants/advisors listed on its team page– hardly the major partner that we believe would be capable of handling hundreds of millions of dollars in orders.
- Obviously, we believe the Covid-19 hype surrounding SCWorx is completely bogus and we predict shares will soon return to the $2.25 price level they were at prior to the hype.
- We also think shares risk being halted and ultimately could move far lower than $2.25 if/when regulators investigate the company's potentially nefarious business practices at a time when our country and its citizens are arguably at their most vulnerable. We're offended by how egregious this appears, not only as investors, but as Americans.

(Emphasis added.)

22.    On this news, the Company's share price fell $1.19, or more than 17%, over three consecutive trading sessions to close at $5.76 per share on April 21, 2020, on unusually heavy trading volume.

23.    On April 22, 2020, the SEC halted trading of the Company's stock. As of the filing of this complaint, trading remains halted.

## CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired SCWorx securities between April 13, 2020 and April 17, 2020, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, SCWorx's common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least

hundreds or thousands of members in the proposed Class. Millions of SCWorx common stock were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by SCWorx or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of SCWorx; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

29. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

30. The market for SCWorx's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, SCWorx's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired SCWorx's securities relying upon the integrity of the market price of the Company's securities and market information relating to SCWorx, and have been damaged thereby.

31. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of SCWorx's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about SCWorx's business, operations, and prospects as alleged herein.

32. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about SCWorx's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

33. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34. During the Class Period, Plaintiff and the Class purchased SCWorx's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

35. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendant, by virtue of his receipt of information reflecting the true facts regarding SCWorx, his control over, and/or receipt and/or modification of SCWorx's allegedly materially misleading misstatements and/or his associations with the Company which made him privy to confidential proprietary information concerning SCWorx, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

36. The market for SCWorx's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, SCWorx's securities traded at artificially inflated prices during the Class Period. On April 13, 2020, the Company's share price closed at a Class Period high of $12.02 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of SCWorx's securities and market

information relating to SCWorx, and have been damaged thereby.

37. During the Class Period, the artificial inflation of SCWorx's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about SCWorx's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of SCWorx and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38. At all relevant times, the market for SCWorx's securities was an efficient market for the following reasons, among others:

(a) SCWorx shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, SCWorx filed periodic public reports with the SEC and/or the NASDAQ;

(c) SCWorx regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) SCWorx was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and

certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

39. As a result of the foregoing, the market for SCWorx's securities promptly digested current information regarding SCWorx from all publicly available sources and reflected such information in SCWorx's share price. Under these circumstances, all purchasers of SCWorx's securities during the Class Period suffered similar injury through their purchase of SCWorx's securities at artificially inflated prices and a presumption of reliance applies.

40. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

41. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-

looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of SCWorx who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

42. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase SCWorx's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

44. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SCWorx's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about SCWorx's financial well-being and prospects, as specified herein.

46. Defendants employed devices, schemes and artifices to defraud, while in

possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SCWorx's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about SCWorx and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

47.     The Individual Defendant's primary liability and controlling person liability arises from the following facts: (i) the Individual Defendant was a high-level executive and/or director at the Company during the Class Period and member of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

48.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SCWorx's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by

Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of SCWorx's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired SCWorx's securities during the Class Period at artificially high prices and were damaged thereby.

50.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that SCWorx was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their SCWorx securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendant

53. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54. Individual Defendant acted as a controlling person of SCWorx within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his high-level position and his ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendant had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendant was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, Individual Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56. As set forth above, SCWorx and Individual Defendant each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of his position a as controlling person, Individual Defendant is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: April 29, 2020

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Daniel Yannes*

## SWORN CERTIFICATION OF PLAINTIFF

## SCWORX CORP. SECURITIES LITIGATION

I, Dan Yannes, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I am duly authorized to institute legal action against SCWorx Corp. and other defendants.

3. I did not purchase the SCWorx Corp. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

4. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

5. My transactions in SCWorx Corp. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

6. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

7. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

4/27/2020

Date

DocuSigned by:
*Daniel Yannes*
18D6259431C04B8...

Dan Yannes

**Dan Yannes's Transactions in SCWorx Corp. (WORX)**

| Account 1 | | | |
|---|---|---|---|
| **Date** | **Transaction Type** | **Quantity** | **Unit Price** |
| 4/13/2020 | Bought | 2,000 | $12.0000 |
| 4/13/2020 | Bought | 2,000 | $13.7500 |
| 4/13/2020 | Sold | -2,000 | $13.5000 |
| 4/14/2020 | Bought | 500 | $10.9000 |
| 4/14/2020 | Bought | 500 | $9.9900 |
| 4/14/2020 | Bought | 100 | $9.3800 |
| 4/14/2020 | Bought | 200 | $9.3900 |
| 4/14/2020 | Bought | 200 | $9.4193 |
| 4/14/2020 | Bought | 500 | $9.0000 |
| 4/14/2020 | Bought | 500 | $8.5000 |